1   SULLIVAN, HILL, LEWIN, REZ & ENGEL          **Electronically Filed: September 17, 2012**
    A Professional Law Corporation
2     Christine A. Roberts, NV SBN 6472
      Elizabeth E. Stephens, NV SBN 5788
3   228 South Fourth Street, First Floor
    Las Vegas, NV 89101
4   Telephone: (702) 382-6440
    Fax Number: (702) 384-9102
5   Email: roberts@sullivanhill.com

6   Attorneys for Yvette Weinstein,
    Chapter 7 Trustee
7

8              **UNITED STATES BANKRUPTCY COURT**

9                    **DISTRICT OF NEVADA**

10

11  In re                                    CASE NO: BK-S- 10-27221-MKN
                                             Chapter 7
12  AHARON RONI SAS and
                                             **OPPOSITION TO MOTION TO**
13  ORNA COHEN,                              **TURNOVER REMAINING PROCEEDS**
                                             **OF PERSONAL INJURY SETTLEMENT**
14                      Debtor.              **TO THE TRUSTEE**

15                                           Date:   September 26, 2012
                                             Time:   2:30 p.m.
16
                                             Ctrm:   2
17                                                   Foley Federal Building
                                                     300 Las Vegas Blvd., South
18                                                   Las Vegas, Nevada 89101
                                             Judge: Hon. Mike K. Nakagawa
19

20

21          Yvette Weinstein, Chapter 7 Panel Trustee, through her counsel, Christine A. Roberts, Esq.,

22  of Sullivan, Hill, Lewin, Rez & Engel, hereby opposes the Motion to Turnover Remaining Proceeds

23  of Personal Injury Settlement to the Trustee [Dkt. # 51]("Opposition"). This Opposition is based

24  upon the entire case file, the Declaration of Yvette Weinstein, upon the memorandum of points and

25  authorities herein, and upon any oral argument this Court may entertain.

26  / / /

27  / / /

28  / / /

343946-v1                        1

# I.

## STATEMENT OF FACTS

Debtors filed a Voluntary Chapter 7 Petition on September 11, 2010. Yvette Weinstein was appointed the Chapter 7 Trustee. On their initial Petition Debtors did not list any claims or lawsuits on either Schedule B or Schedule C. On or about October 19, 2010 Debtors amended their Schedule B and Schedule C to include a personal injury lawsuit. The value listed on both Schedule B and Schedule C was $16,150. After the Amendments were filed the Trustee changed the case from a no asset to an asset case. The Trustee later changed the case to a no asset and on October 26, 2011 the case was closed. (*See,* Declaration of Yvette Weinstein in Support of this Motion).

Prior to the closing of the case the Trustee contacted the Debtors' personal injury attorney, Imanuel Arin, Esq. to determine the status and value of the case. According to Mr. Arin's office the case had not settled and was only worth approximately $20,000. (*See,* Weinstein Declaration.) Since the Debtors' exemption and the attorneys' fees would exceed the amount of recovery, the Trustee determined the case was a no asset. (*See,* Weinstein Declaration.) The Trustee would not have changed the case back to a no asset if she had not received this information from Mr. Arin's office.

On June 28, 2012, Debtors filed their Motion to Reopen the Case. The motion was vague but the opening paragraph said that one of the reasons for re-opening the case was to update the status of the lawsuit. The motion appeared to contemplate reopening for the purpose of administrating the personal injury case.

On July 23, 2012 the Trustee was contacted by Janet Chubb, Esq. Ms. Chubb represents Roni Shaked. According to Ms. Chubb, her client, who was never listed as a creditor before the case was closed, had a secured lien on the personal injury proceeds. Ms. Chubb also informed the Trustee that the Debtor had obtained a $200,000 arbitration award in the case. Ms. Chubb informed the Trustee that she had not received a response from Mr. Arin regarding the status of the payment but that insurance defense counsel had confirmed that her client had mailed a check to Mr. Arin. The Trustee directed her attorney to contact the Debtor's attorney and Mr. Arin but her attorney did not receive a response from Mr. Arin. The Trustee then filed a joinder to the motion.

343946-v1                    2

1      On or about August 1, 2012, the court heard the motion to reopen and the court reopened the

2  case.  The law office of Roger Giuliani appeared at the hearing on behalf of Mr. Arin.  Mr. Giuliani

3  was hired to protect Mr. Arin's fees.  After the hearing the Trustee's counsel advised Mr. Giuliani's

4  associate that the Trustee would be filing appropriate motions to approve the award and pay attorney

5  fees.  The Trustee also asked that Mr. Arin provide a log of his time on the case.

6      On August 24, 2012, without the knowledge or consent of the Trustee, Mr. Giuliani filed the

7  Motion to Turn Over Remaining Proceeds of Personal Injury Settlement to Trustee Immediately[1].

8  The Trustee's counsel contacted Mr. Giuliani immediately after the filing of the motion.  The motion

9  sought to turn over the award in the amount if the award minus Mr. Arin's fees and costs.  The

10  Trustee's counsel then sent correspondence to Mr. Giuliani confirming the conversation between

11  them wherein Trustee's counsel informed Mr. Giuliani of the flaws in the motion.  (A copy of the

12  correspondence dated August 24, 2012 is attached hereto and incorporated herein as Exhibit "1".)

13  On or about August 27, 2012, the Trustee's counsel and Mr. Giuliani began negotiating a settlement

14  with respect to turning over the award proceeds and paying Mr. Giuliani's fees.

15      On September 10, 2012, the Trustee's counsel received the Shaked Proof of Claim.  Among

16  the documents filed in support of the claim was a Pre-Writ of Attachment dated November 1, 2007

17  in a lawsuit filed against the Debtors by Shaked.  The Pre-Writ ordered that any award from the

18  Debtors' personal injury case be placed in escrow.  The funds were not placed into an escrow, but

19  rather have remained in Mr. Arin's trust account.

20      The Trustee has also obtained a copy of correspondence from Mr. Arin sent to defense

21  counsel in the personal injury case dated October 13, 2011, prior to the closing of the case, wherein

22  Mr. Arin demanded defense counsel turn over the total award to him. (A copy of the Correspondence

23  from Arin to Stephenson is attached hereto and incorporated herein as Exhibit "2").  Mr. Arin further

24  stated in the letter that he would keep his fees and turn over the remainder of the award to the

25  Trustee.  However, Mr. Arin never informed the Trustee of the award at any time, from the time he

26  sent the correspondence in October to the time the Debtors filed the motion to reopen the case.  The

27

28  [1] The amount of the award was in excess of $531,000, but the parties agreed to cap the damages in the amount of
$200,000, the amount Mr. Arin is holding.

343946-v1                                            3

1   Trustee is uncertain as to when he received the funds, but has obtained a copy of a void check dated

2   October 26, 2011, the day the case was closed (A copy of the check is attached hereto and

3   incorporated herein as Exhibit "3"). The Debtors signed a release on October 27, 2011, one day

4   after the case was closed. (A copy of the release is attached hereto and incorporated herein as Exhibit

5   "4").

6          After the Trustee received the Shaked Proof of Claim she began negotiations with Mr. Arin's

7   counsel and Mr. Shaked's counsel. Believing the parties were close to a settlement the Trustee held

8   off filing this motion for turnover.

9          On Thursday, September 13, 2012, the negotiations broke down. Also on Thursday,

10  September 13, 2012, the Trustee received communication from another previously undisclosed

11  creditor, Plaintiff Funding Corporation ("Lawcash"). According to Lawcash's attorney, Lawcash

12  advanced funds to the Debtors pre-petition in exchange for an assignment of a portion of the Debtors

13  proceeds from the settlement.

14                                             **II.**

15                                    **<u>LEGAL ARGUMENT</u>**

16         Abandonment is governed by U.S.C. § 554. U.S.C. § 554(a) and (b) provide that after notice

17  and a hearing the court may order property of the Estate abandoned. That did not happen in this

18  case. Arin argues in his motion for turnover that his fees are not property of the Estate because the

19  litigation was filed a year before the bankruptcy was filed, it was settled one year after the

20  bankruptcy was filed, the litigation was abandoned and the final discharge issued in December of

21  2010. The fact that the personal injury case was filed six years prior to the bankruptcy filing and

22  settled after the discharge was issued is irrelevant as long as the case remained open and the Trustee

23  had not affirmatively abandoned the suit pursuant to 11 U.S.C. § 554(a) or (b). Without formal

24  abandonment the claim remained property of the Estate pursuant to 11 U.S.C. § 541.

25         Arin argued in his motion that his fees are not part of the bankruptcy because the claim was

26  abandoned. Strangely, however, he is seeking to turn over the remainder of the fees to the Trustee to

27  administer. If there had been an abandonment the funds would be abandoned back to the Debtor

28  pursuant to §544(d). If Arin is arguing that the Trustee abandoned the lawsuit pursuant to 11 U.S.C.

343946-v1                                      4

1  § 544(c), technical abandonment, the Trustee believes that can be overcome.  Further, technical

2  abandonment is revocable. In *Devore v. Marshack*, *In re Devore*, 223 B.R. 193 (9th Cir B.A.P. 1998)

3  the court followed the rule set forth *In re Shelton,* 201 B.R. 147 (Bankr. E.D. Va 1996) that courts

4  have the discretion to affect or prevent technical abandonment simply by ordering otherwise.  The

5  court found that U.S.C. § 554(c) does not limit such a closure to the period prior to the case closure,

6  and courts have set aside technical abandonment in appropriate circumstances. *Shelton* at 155.

7  Appropriate circumstances have been found where the Trustee is given false or incomplete

8  information about the asset by the Debtor; the Debtor fails to list the asset altogether; or where the

9  Trustee's abandonment was the result of a mistake or inadvertence, and no undue prejudice will

10  result in revocation of abandonment.  *Devore* citing  *In re Ozer,* 208 B.R. 630 (Bankr. E.D.N.Y.

11  1997).  *Devore* extended the finding in *Gross v. Petty* (*In re Petty*) 93 B.R.208, 212 (9th Cir. B.A.P.

12  1988), which found that where an asset was not disclosed the case was not fully administered

13  pursuant to U.S.C. §350(a) and therefore not properly and finally closed.  In *Devore*, the court found

14  that the cases are based on a finding that the property was not properly scheduled, and thus the

15  U.S.C. § 554(c) requirement was not met, or in equitable consideration. *Devore* at 198.

16       The Trustee changed the case to a no asset based on false or incorrect information relayed to

17  her by Mr. Arin's office and a false value listed on the bankruptcy Petition.  The Trustee would likely

18  have employed Mr. Arin as Special Counsel had she been given accurate information regarding the

19  value of the lawsuit.  The Trustee made her inquiry to Mr. Arin's office in early 2011.  Surely Mr.

20  Arin would have known at that time a better estimate of the case.  For instance, the Debtor had over

21  $80,000 in medical bills.  Also, Mr. Arin had already advanced some of the $25,000 in costs that he

22  incurred.  Further, there is no plausible explanation as to why the Trustee would change the case

23  back to a no asset after changing it to an asset case to administer the claim.

24       In the alternative the Trustee argues for an order revolving the technical abandonment by

25  vacating the order closing the case, based on F.R.C.P 60(b)(1). In *In re Gonzalez*, 302 B.R. 687

26  (Bankr. D. Cal. 2003) the court found it was appropriate to consider F.R.C.P. 60(b)(1) in

27  determining whether it is equitable to grant a revocation of the technical abandonment of the

28  property.  The factors to consider when considering whether to grant a 60(b)(1) motion are: 1) the

1   danger of prejudice to the opposing party; 2) the length of the delay and its potential impact on the

2   proceedings; 3) the reason for delay; and 4) whether the movant acted in good faith.  All four factors

3   are met here.  The Trustee clearly acted in good faith and it has been less than a year since the case

4   was closed.  The only party to be prejudiced in this instance is the Debtor to whom the property

5   would be abandoned.  In this case it was actually the Debtors who re-opened the case to administer

6   the claim.

7        Since the Debtors reopened the case the lawsuit has not been abandoned and the funds should

8   be turned over to the Trustee.  Arin has not been employed in the case, nor have his fees been

9   approved.  Further, there are two creditors who may have secured claims.  There are insufficient

10  funds to pay Arin's fees, the Shaked claim and the Debtor's exemption.  This does not even factor in

11  the anticipated claim of Lawcash, who may file a secured claim.  Additionally, if the Debtors

12  received an advance on the lawsuit they may not be entitled to their exemption.

13       Due to the many issues which need to be sorted out, the Trustee request that the entire award

14  be turned over to her until the parties can come to a resolution or the court makes a determination

15  regarding the claimants and their priorities, and for an order revoking the abandonment, if any.

16                                          **III.**

17                                     **CONCLUSION**

18       **WHEREFORE,** the Trustee prays for an order from this Court requiring Mr. Arin to turn

19  over all funds awarded in the personal injury settlement; for an order revoking the abandonment, if

20  any; and for any further relief the Court may deem to grant.

21

22  Dated:        September 14, 2012                    SULLIVAN, HILL, LEWIN, REZ & ENGEL
                                                        A Professional Law Corporation
23

24

25
                                                        Christine A. Roberts, Esq.
26                                                      Attorneys for Yvette Weinstein,
                                                        Chapter 7 Trustee
27

28

343946-v1                         6

# EXHIBIT "1"



Sullivan Hill Lewin Rez & Engel
A Professional Law Corporation

228 South Fourth Street
1st Floor
Las Vegas, NV 89101
☎ 702.382.6440
🖷 702.384.9102

sullivanhill.com

Christine A. Roberts
roberts@sullivanhill.com
D 702.202.3287

August 24, 2012

*__VIA ELECTRONIC MAIL AND FIRST CLASS MAIL__*

Roger Giuliani
500 N. Rainbow Suite 300
Las Vegas, NV 89107

Re:    Sas and Cohen BK-S-10-27221-MKN

Dear Mr. Guiliani:

I have reviewed your Motion to Turn Over Proceeds of Personal Injury Settlement to Trustee. As we discussed your motion is improper for a number of reasons. First your client has not been employed by the Estate. Second the award has not been approved. Third your client's fees have not been approved. Fourth your client needs to turn over the funds to the Trustee who will disburse the funds to your client if and when his fees are approved.

The entire award is property of the Estate pursuant to 11 U.S.C. §541. Your client is holding funds which belong to the Estate. Your client does not own the funds, he is merely a creditor of the Estate. Prior to Mr. Arin retaining you I attempted to contact him on a number of occasions to determine the status of the funds and to request turnover but he did not return my calls. The Trustee demands that you immediately withdraw your motion and your client immediately turn over the entire award to the Trustee. If the Trustee does not turn over the funds by 5:00 p.m. on Tuesday, August 28, 2012 the Trustee will file a motion for turnover of the funds on Order Shortening Time and seek sanctions against your client.

Sincerely,

SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation

By: _____
Christine A. Roberts

/car
c:    Yvette Weinstein

**EXHIBIT "2"**

**Arin & Associates** inc.
*Attorneys at Law*

CITY CENTER WEST
7201 W. Lake Mead Boulevard, Suite 208 • Las Vegas, Nevada 89128
Telephone: (702) 838-8600 • Facsimile: (702) 838-8601

Imanuel B. Arin

Matthew W. Hoffmann
*Also admitted in California
and North Dakota*

October 13, 2011

Fax: 474-7237 & Mail
Marsha L. Stephenson, Esq.
Stephenson & Dickinson, P.C.
2820 W. Charleston Blvd. - Suite 19
Las Vegas, NV 89102

Re:    Aharon Sas vs. Robert Castro et al

Dear Marsha:

I am in receipt of your correspondence today and have read the letter from Mr. Shaked's attorney. Shaked's claim that they did not receive notice of the bankruptcy does not make any sense. If Mr. Sas' bankruptcy lawyer or Mr. Sas were going to defraud Shaked, as his attorney claims, it wouldn't make any sense for Mr. Sas to list the Shaked lawsuit and judgment on his bankruptcy petition. They would have just left it off the petition. Further, since it was listed, the trustee would have sent notice out. Do they really think that the Trustee would not have sent notice to a creditor that was listed on the petition?

Regardless of whether you believe Shaked's attorney or not, a letter or telephone call from attorney Chattah does not override a U.S. Bankruptcy Court Order or a Bankruptcy Trustee regarding the discharge. Sigal Chattah, Esq. is free to file whatever motion or pleading he or she wants with the bankruptcy trustee. If the trustee decides to make them some type of priority creditor and give them money ahead of other creditors is not relevant for the purposes of sending us the arbitration award check. The check from your client is put into my firm's trust account and no money is disbursed to Mr. Sas directly. My legal obligation is to turn over any proceeds to the trustee after my fees, liens and costs are satisfied. Furthermore, I have the same Writ of Attachment notice from Shaked's attorney that you do and are under the same restrictions regarding payment to Mr. Sas directly.

Marsha, my fees and costs are not part of the bankruptcy proceedings nor have they ever been. Please do not create an issue and delay payment to us based on a claim by Shaked's attorney that they will be filing a motion with the trustee. This is really very simple; please do not make it more complicated than it needs to be. Neither you or your carrier are violating any court order or liable in any way by sending the check to my office directly. Neither you or your carrier are paying Mr. Sas any money by sending the check to my office to be placed in the trust account. This is especially true when you have my representation in writing that no money will be disbursed to Mr. Sas directly and the remaining money, after my fees, liens, and costs will be turned over to the trustee directly.

Marsha L. Stephenson, Esq.                                                October 13, 2011
Re: Aharon Sas vs. Robert Castro et al                                    Page 2

Please send the release for Mr. Sas to sign so that we can receive the settlement check from you to place in my firm's trust account. If you have any questions, please e-mail me a convenient time for us to speak and I will get to a location with cell phone service and call you.

Sincerely,
ARIN & ASSOCIATES, P.C.
*(Dictated/not read; signed for Mr. Arin*
*To expedite)*

**IMANUEL B. ARIN**
Imanuel B. Arin, Esq.

IBA/lg

# EXHIBIT "3"



# EXHIBIT "4"

<u>RELEASE OF ALL CLAIMS, SATISFACTION OF ARBITRATION AWARD</u>
<u>AND AGREEMENT TO INDEMNIFY</u>

For the sum of $200,000.00 (Two Hundred Thousand and 00/100 Dollars) payable to ARIN & ASSOCIATES Trust Account, the undersigned AHARON SAS does hereby fully release, acquit and forever discharge ROBERT CASTO and AIR ONE TRANSPORT and their insurers, of and from all known and unknown claims, actions, causes of action which he now has or may hereafter acquire by reason of injuries to his person as a result of the incident which occurred on or about March 26, 2004, as described in Plaintiff's Complaint, Case No. A505324.

IT IS ALSO UNDERSTOOD AND AGREED AND MADE A PART HEREOF:

The parties agreed to submit the claims of AHARON SAS to binding arbitration, pursuant to a binding arbitration agreement, with a high limit of $200,000.00. This binding arbitration was held in front of a panel of three arbitrators on August 24, 2011. The panel issued its award to AHARON SAS on September 30, 2011. Pursuant to the binding arbitration agreement, AHARON SAS agreed that his award would be limited to $200,000.00.

That the issuance of said draft is in full satisfaction of the binding arbitration agreement and award, is an accord and satisfaction and discharge of any loss, damages, claims, causes of action, suits and liability for this March 26, 2004 incident. The release and payment of this arbitration award also applies to and also covers and includes all unknown, unforeseen, unanticipated and unsuspected injuries, damages, loss and liability, and the consequences thereof, as well as those now disclosed and known to exist.

In addition, the undersigned agree to indemnify and save harmless the parties hereto released from any and all liens, medical or otherwise, claims, bills, accounts, invoices and the like which have been asserted or may be asserted against the undersigned for this March 26, 2004 accident and/or the proceeds of Case No. A505324, including this binding arbitration award.

That AHARON SAS has been discharged in bankruptcy. Counsel for AHARON SAS represents that the money will be kept in his trust with no amount being dispersed directly to AHARON SAS, without approval or consent of the bankruptcy trustee. This representation does not

1

affect any disbursements for attorneys' fees, costs and liens, relating to the March 26, 2004 incident and subsequent legal proceedings.

That this release, including satisfaction of arbitration award and agreement to indemnify, is the entire, complete, sole and only understanding and agreement of, by and between the undersigned and releasees pertaining to and concerning the subject matter and things expressed herein, and there are no independent, collateral, different, additional or other understandings or agreements, oral or written, or obligations to be performed, things to be done, or payments to be made, and further, no promise, inducement or consideration other than the issuance of said draft has been made or agreed upon by or on behalf of releasees or any of them.

That each releasee shall be held harmless of and from and indemnified for and against all loss, damages, costs, and expenses, including reasonable attorney fees and all other sums which said releasee may hereafter incur, pay, be required or become obligated to pay on account of any and every further, additional or other demand, claim, or suit by or on behalf of any undersigned or any other person, firm, or corporation, including any judgment creditor, including but limited to those identified in AHARON SAS's discharged bankruptcy, which may claim any interest in the arbitration award or for any contest or attempt to modify, change, reform, break, set aside, nullify, cancel or negate this release or any part or provision of said release for any reason whatsoever.

BY SIGNING THIS RELEASE THE UNDERSIGNED DOES THEREBY ACKNOWLEDGE AND WARRANT:

That said release was first carefully read in its entirety by or to them and was and is understood and known to be a full and final compensation settlement, release, accord, and satisfaction and discharge of all claims, actions, and causes of action and suits as above stated. That said release was signed and executed voluntarily and without reliance upon any statement or representation of or by any releasee or any representative, agent, or doctor of same concerning the nature, degree and extent of said damages, loss of injuries, or legal liability therefor. That said release contains the entire agreement of and between all of the parties mentioned therein, and that all of the terms and provisions of said release are contractual and not a mere recital. That the

2

undersigned is of legal age and capacity and competent to sign and execute said release and accept full responsibility therefor.

READ AND SIGNED this 27 day of _____ *11* _____, 2011, at _____, by

_____
AHARON SAS

STATE OF NEVADA    )
                   )    ss:
COUNTY OF CLARK    )

On this 27 day of _____ Oct _____, 2011, before me, the undersigned, a Notary Public in and for said County and State, appeared AHARON SAS, known to me to be the person who executed the above and foregoing instrument and who acknowledged to me that he did so freely and voluntarily and for the purpose therein mentioned.

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
ANDREW FEILER
June 03, 2010

_____
NOTARY PUBLIC

APPROVED AS TO FORM AND CONTENT:

_____
IMANUEL ARIN, ESQ.
MATTHEW HOFFMAN, ESQ.
Attorneys for Plaintiff

3