1  TIMOTHY S. CORY, ESQ.                                    ECF FILED 10/08/2012
   Nevada Bar No. 1972
2  JESSICA G. PETERSON, ESQ.
   Nevada Bar No. 11243
3  **DURHAM JONES & PINEGAR**
   10785 West Twain Avenue, Suite 200
4  Las Vegas, Nevada 89135
   Telephone: (702) 870-6060
5  Telephone: (801) 415-3000
   Attorneys for Arin & Associates
6
                    **UNITED STATES BANKRUPTCY COURT**
7                          **DISTRICT OF NEVADA**

8                                    )
                                     )                BANKRUPTCY CASE NO.
9                                    )                 BK-S-10-27221 MKN
     In re:                          )                     Chapter 7
10                                   )
     AHARON RONI SAS and             )        **OPPOSITION TO MOTION FOR TURNOVER**
11                                   )          **OF ARBITRATION FUNDS AND TO**
     ORNA COHEN,                     )               **REVOKE ABANDONMENT**
12            Debtors.               )
                                     )        **Hearing Date:  October 10, 2012**
13                                   )        **Hearing Time:   2:30 p.m.**
                                     )        **Hearing Location:  Courtroom 2, Foley**
14                                   )        **Federal Building, 300 Las Vegas Blvd.,**
                                     )        **South, Las Vegas, NV 89101**
15  _____ )

16                          <u>**INTRODUCTION**</u>

17         The Trustee's motion requests that an asset that has already been fully administered and

18  abandoned, and upon which abandonment the counsel responsible for obtaining the asset was entitled

19  to rely, be brought back into the estate though revocation of the abandonment based solely on the

20  Trustee's mistaken belief as to the value of the asset.  The motion does so without acknowledging the

21  standards for trustee assessment of assets and without bringing an adversary proceeding.  There is no

22  case law permitting such a result, and Arin & Associates respectfully requests that the Court deny the

23  motion in its entirety.

24                                    1

1

## **BACKGROUND**

2       Imanuel B. Arin is an attorney licensed to practice law in the State of Nevada and was hired to

3 represent the Debtor, Aharon Roni Sas, to seek recovery for injuries the Debtor sustained in an

4 automobile accident on March 26, 2004. *See Declaration of Imanuel B. Arin*, filed concurrently

5 herewith, at ¶ 1. Mr. Arin's law firm, originally Parker, Nelson & Arin, Chtd. and subsequently

6 dissolved and replaced by Arin & Associates, P.C. ("Arin") was hired on April 14, 2005, to represent

7 Mr. Sas in his personal injury claim. *See id.*, ¶ 2. Mr. Sas executed a Retainer Agreement with Arin

8 which called for an attorney fee of forty percent in the event a lawsuit or demand for arbitration is

9 filed. *See id.* The fee agreement also provides for reimbursement of costs incurred. *See id.* Mr. Sas

10 filed a chapter 7 bankruptcy petition on September 11, 2010. *See id.*, ¶ 3. Neither Mr. Arin nor his

11 law firm received notice of the bankruptcy filing. *See id.*

12       The litigation that ensued was very contentious. *See id.*, ¶ 4. The Defendants contested

13 liability and damages throughout the duration of the case. *See id.* The parties conducted extensive

14 discovery preparing their respective cases for trial. *See id.* The litigation lasted over six (6) years

15 until it was finally resolved through panel arbitration of three arbitrators. *See id.*

16       During the pendency of the litigation, voluminous records were produced and reviewed by

17 Plaintiff's counsel. *See id.*, ¶ 5. In addition to the initial disclosure and production of documents as

18 governed by NRCP 16.1, the defense served twenty-one (21) supplemental productions of documents

19 on behalf of Mr. Sas. *See id.*

20       Mr. Sas sustained serious injuries to his spine and shoulder. *See id.*, ¶ 6. The injuries

21 necessitated multiple surgical and injection procedures at a number of medical facilities. *See id.* Due

22 to the complexity of Mr. Sas' injuries, two medical experts needed to be retained for trial in order to

23 prosecute his case. *See id.* More specifically, orthopedic surgeon Dr. Reynold Rimoldi was retained

24

1    in regards to Mr. Sas' shoulder injury which required surgery to repair.  *See id.*  Board-certified pain

2    specialist, Dr. Raimundo Leon, M.D., was retained in regards to Mr. Sas' spinal injury.  *See id.*  In

3    addition, numerous treating doctors were listed as medical experts for the purposes of this litigation.

4    *See id.*  The Defendants also retained two medical experts.  *See id.*, ¶ 7.  Orthopedic surgeon Dr. John

5    Herr, M.D., was retained in regards to Mr. Sas' shoulder injury and orthopedic spine surgeon,

6    Dr. Zoran Maric, M.D., from Phoenix, Arizona was retained to address Mr. Sas' spinal injuries.

7    *See id*.

8        Both of the Defendants' experts produced extensive expert reports in preparation for trial.

9    *See id*.  Counsel for Mr. Sas took the depositions of both experts at great expense in order to properly

10    prepare the case.  *See id*.  In fact, Arin was forced to fly to Phoenix, Arizona in order to secure

11    Dr. Maric's deposition.  *See id*.  In addition to the extensive expert witness depositions, Arin

12    participated in the multiple depositions taken in this case, including experts, parties, treating doctors,

13    and the Defendants' private investigator.  *See id*., ¶ 8.  Beyond the discovery actions, Arin prepared

14    and filed twenty-one (21) motions in limine, all of which were contested, and all of which required

15    Arin to prepare replies.  *See id*., ¶ 9.  Arin also opposed three (3) motions in limine filed by

16    Defendants.  *See id*.  Ultimately, on June 12, 2009, the parties entered into a stipulation for binding

17    arbitration.  *See id*., ¶ 10.  The panel of three arbitrators conducted the arbitration on August 24,

18    2011.  *See id*.  A decision was issued in favor of Mr. Sas on October 30, 2011.  *See id*.  Pursuant to

19    the terms of the Arbitration agreement, Mr. Sas received a maximum award of $200,000.  *See id*.,

20    ¶ 11.

21        Pursuant to the retainer agreement entered into by Mr. Sas, Arin is entitled to an attorney's fee

22    in the amount of $80,000, which represents 40% of the total Arbitration award amount ($200,000.00).

23

24                                                3

1    *See id.*, ¶ 12.  Arin is also entitled to reimbursement of its costs, pursuant to the retainer agreement.

2    *See id.*  These costs total $25,050.69 and were reasonably and necessarily incurred.  *See id.*

3           Arin engaged in over six (6) years of litigation in representing Mr. Sas regarding the injuries

4    he sustained, and ultimately obtained a favorable result for Mr. Sas.  *See id.*, ¶ 13.  Forty percent

5    (40%) is a standard and accepted contingency rate for cases such as this, where litigation is

6    contentious and takes place over an extended period of time.  *See id.*, ¶ 14.

7           Prior to the bankruptcy case closing, on October 26, 2011, Arin was never contacted by

8    Yvette Weinstein or counsel for Yvette Weinstein to make any inquiries into the personal injury case.

9    *See id.*, ¶ 15.  Arin made a diligent review of its telephone logs, correspondence, emails, and other

10   records, and there were no phone calls, correspondence, emails, or any contact from Yvette

11   Weinstein or counsel for Yvette Weinstein prior to October 26, 2011.  *See id.*, ¶ 16.  Mr. Arin never

12   spoke with Yvette Weinstein or her counsel prior to October 26, 2011.  *See id.*, ¶ 17.

13                                   **STATEMENT OF FACTS**

14          The Debtors filed a voluntary chapter 7 bankruptcy petition on or about September 11, 2010.

15   The Debtors filed statements and schedules on that same date.  *See* Dkt. 1.  The Debtors amended

16   their statements and schedules twice, on October 19, 2010 and October 22, 2010, both times

17   including the personal injury claim on both Schedule B and C.  *See* Dkts. 15 and 17.  On

18   December 20, 2010, the Debtors received their discharge.  On January 25, 2011, the Trustee filed a

19   report of no distribution.  On October 26, 2011, a final decree discharging the Trustee was entered

20   and the chapter 7 case was closed.  At that time, section 554(c) provided that property that was listed

21   in the Debtors' schedules was abandoned to the Debtors.

22          The asset was abandoned and the Debtor's personal injury counsel, Arin & Associates

23   ("Arin"), continued to prosecute the personal injury case and obtained relief for the Debtors, on the

24                                             4

1   assumption that Arin would be compensated for its services.  Now that Arin has successfully

2   prosecuted the case and obtained a good recovery for the Debtors, the Chapter 7 Trustee is attempting

3   to deny him his fees.

4          The Debtors scheduled the personal injury claim.  Specifically, at Dkts. 15 and 17,

5   Schedule B, question 21, the Debtors identified, "Personal Injury Claim (Case#: A505324) SAS VS

6   CASTRO/AIR ONE TRANSPORT (ARIN&ASSOCIATES)."  The Debtors valued the personal

7   injury claim at $16,150.00, an amount greater than zero, identifying that they believed there was

8   some possible recovery and value to the asset, and putting the Trustee on notice of the same.

9   The Trustee was aware that the claim was scheduled.  In her Declaration, Dkt. 42, the Trustee stated,

10  "On or about October 19, 2010 Debtors amended their Schedule B and Schedule C to include a

11  personal injury lawsuit. . . .  Prior to the closing of the case I contacted the Debtors' personal injury

12  attorney, Imanuel Arin, Esq.  According to Mr. Arin's office the case had not settled and was only

13  worth approximately $20,000.[1]  Since the Debtors' exemption and the attorney fees would exceed the

14  amount of recovery I determined the case was a no asset."  *See* Dkt. 42, ¶¶ 5–10.

15         There are two apparent disclosures from the Trustee's Declaration.  First, the Trustee was on

16  notice that the case might have some slight upside for the Debtors.  Specifically, although it was

17  scheduled at the value of the exemption, $16,150.00, the Trustee was informed and believed the value

18  would be closer to $20,000.  Rather than keeping the case open and waiting for the results of the

19  personal injury claim to be determined, otherwise attempting to obtain value to the estate for the

20  personal injury claim, or performing an in-depth investigation into the value of the case, the Trustee

21  _____

22  [1] Mr. Arin disputes that he was ever contacted by the Trustee and that he ever told the Trustee the value of the personal injury claim.  *See* Declaration of Imanuel B. Arin, filed concurrently herewith, at ¶¶ 15–17.  However, either way, the Trustee was still on notice that there was a potential upside for

23  the Debtor.

24                                              5

filed a no asset report and closed the case.  The Trustee, exercising her business judgment,

determined not to pursue this asset, and closed the case.  Thus, there was no mistake or inadvertence

on the part of the Trustee.

<u>**ARGUMENT**</u>

**A.      Revocation of the Trustee's Informed Abandonment is Not Justified Under the Applicable Ninth Circuit Case Law**

Section 554(c) provides, "Unless the court orders otherwise, any property scheduled under

section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is

abandoned to the debtor and administered for purposes of section 350 of this title."  The Ninth Circuit

B.A.P. identified the standard for "appropriate circumstances" where abandonment pursuant to

section 554(c) might be revoked.  *See DeVore v. Marshack (In re DeVore)*, 223 B.R. 193, 198

(9th Cir. B.A.P. 1998).  The standard is high:

> Appropriate circumstances have been found where the trustee is given false or incomplete information about the asset by the debtor; the debtor fails to list the asset altogether; or where the trustee's abandonment was the result of a mistake or inadvertence, and no undue prejudice will result in revocation of the abandonment.

*Id.* at 198.  The Ninth Circuit B.A.P. has never revoked a technical abandonment.  *See id.* at 199

("We do not here decide whether a court can, for equitable reasons, or because of the trustee's

inadvertence, set aside a valid technical abandonment: those issues must await other cases.").

The Ninth Circuit B.A.P. considered revocation of abandonment of a personal injury claim in

the case of *Vasquez v. Adair (In re Adair)*, 253 B.R. 85 (9th Cir. B.A.P. 2000).  In that case, the

chapter 7 trustee sent a letter to debtors' personal injury attorney inquiring into the nature of the case.

*Id.* at 87.  The attorney sent a letter indicating the lawsuit was in the initial stages of litigation and the

trustee could follow up and stated the following:

6

> [W]e have filed a Personal Injury Cause of Action on [Debtor's] behalf in the hopes of finding some additional liability. The case number is PC 016 113Y. At this time, recover [sic] is speculative at best since liability rests on a small cut out or broken piece of a brick on an exterior staircase that plaintiff stepped on which caused the fall. Whether the defendant had notice of this condition at the time of the accident has not been determined at this time. We are in the beginning stages of said litigation and the opposition is denying liability. The injury is already covered by Workmen's Compensation. Obviously, workmen's compensation will have a lien on any recovery. I believe this case will go to trial because of the contested responsibility of the premises owner.

*In re Adair*, 253 B.R. 85, 87 (B.A.P. 9th Cir. 2000) (citations omitted).

The trustee made no further inquiries and filed a no asset report. *Id.* The Debtor settled the case for $430,000. *Id.* "In *DeVore*, we noted the general rule that abandonment is irrevocable, even if it is subsequently discovered that the abandoned property had greater value than previously believed." *In re Adair*, 253 B.R. at 88. The Ninth Circuit B.A.P. concluded that neither the Debtor nor the Debtor's counsel had misled the Trustee and the Trustee had no basis for undoing the technical abandonment.

Under the governing Ninth Circuit case law, revocation of the abandonment is not justified in this case.

**B.    The Debtors' Counsel Suffers Undue Prejudice If the Abandonment is Reconsidered**

Once the case was closed and the asset was abandoned, Arin was entitled to rely on the technical abandonment in continuing to act as attorney and obtain a recovery for the Debtors. Thus, there is great harm to Arin in not receiving its attorneys' fees. The Trustee is inaccurate in her assessment that there is no undue prejudice to the Debtors' counsel, Arin.

**C.    The Trustee Handbook Requires the Trustee to Document Reasons for Abandoning Estate Property**

In addition, the Trustee argues that she relied on Arin in determining the value of the litigation and that her reliance was misplaced. However, a Trustee is under an obligation, as provided in the

7

1   Trustee's handbook, to document reasons for abandoning estate property. "The trustee must be able

2   to justify the decision to abandon estate property. Any documentation in support of this decision is to

3   be kept in the estate file. 28 U.S.C. § 586." U.S. DEPT. OF JUSTICE, *Handbook for Chapter 7*

4   *Trustees*, p. 4-6, Oct. 1, 2012. Therefore, the burden is on the Trustee to justify her decision to

5   abandon estate assets. Arin is entitled to conduct discovery in and to the Trustee's documented

6   reasons for abandoning the litigation and the Trustee is required to keep such documentation.

7   **D.     The Request for Turnover of Funds and to Avoid a Lien Must be Brought in the Form
            of an Adversary Proceeding, Not a Motion**

8

9          Finally, a demand to recover money or property in the possession of a personal injury attorney

10  must be brought in the form of an adversary proceeding, not a motion for turnover. *See* Fed. R.

11  Bankr. P. 7001(1). In addition, the Trustee is challenging Arin's contention that it has an attorney's

12  lien in and to the proceeds, and such challenge must also be brought in the form of an adversary

13  proceeding and not a motion for turnover. *See* Fed. R. Bankr. P. 7001(2).

                                    **<u>CONCLUSION</u>**

14

15         For these reasons, including any other reasons presented at oral argument before this Court,

16  Arin respectfully requests that the Court deny the Trustee's Motion for Turnover of Arbitration Funds

17  and to Revoke Abandonment.

18         Dated this 8th day of October, 2012.

19                                      */s/ Timothy S. Cory*_____
                                        Timothy S. Cory
20                                      Durham Jones & Pinegar
                                        Attorneys for Arin & Associates
21

22

23

24                                          8

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing **OPPOSITION TO MOTION FOR TURNOVER OF ARBITRATION FUNDS AND TO REVOKE ABANDONMENT** was served this 8th day of October, 2012, via regular U.S. mail, postage prepaid upon all parties appearing on the attached mailing matrix and to the following:

UNITED STATES BANKRUPTCY COURT
JUDGE NAKAGAWA'S COURTESY COPY
300 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NV  89101

YVETTE WEINSTEIN
6450 SPRING MTN RD #14
LAS VEGAS, NV 89146

CHRISTINE A. ROBERTS
SULLIVAN, HILL, LEWIN, REZ, & ENGEL
228 SOUTH FOURTH STREET, 1ST FLR
LAS VEGAS, NV 89101

ARUN GUPTA
800 N. RAINBOW BLVD, #208
LAS VEGAS, NV 89107

OFFICE OF THE UNITED STATES TRUSTEE
300 LAS VEGAS BOULEVARD SOUTH
SUITE 4300
LAS VEGAS, NV 89101


*/s/ Kristin Hughes*
Durham Jones & Pinegar, P.C.